994 So.2d 139 (2008)
LILA, INC., d/b/a Super K Food Store
v.
UNDERWRITERS AT LLOYD'S, LONDON.
No. 2008-CA-0681.
Court of Appeal of Louisiana, Fourth Circuit.
September 10, 2008.
*140 Clay J. Garside, Waltzer & Associates, New Orleans, LA, Joel R. Waltzer, Waltzer & Associates, Harvey, LA, for Plaintiff/Appellant.
Rene S. Paysse, Jr., Rachael P. Catalanotto, Johnson Johnson Barrios & Yacoubian, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge Pro Tempore Moon Landrieu).
MAX N. TOBIAS, JR., Judge.
The plaintiff-appellant, Lila, Inc. d/b/a Super K Food Store ("Lila") appeals the trial court's dismissal of its claim on the grounds of prescription against the defendant, Certain Underwriters at Lloyd's, London ("Lloyd's"), for property damages and statutory penalties arising out of Hurricane Katrina. For the reasons that follow, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
This matter arises from a claim for property damages sought by Lila sustained *141 as a result of Hurricane Katrina. Lila operated a gas station and convenience store located in New Orleans, Louisiana. Lloyd's issued to Lila a commercial insurance policy covering property damage to the building and business personal property. Lila contends that the convenience store was damaged by high winds during the hurricane and that it sustained damages to the building and a loss of business income as a result. Lila also claims that the store was looted in the days following the hurricane.
Following Hurricane Katrina, Lila submitted a claim for property damage and loss of business income to Lloyd's. In response, Lloyd's made two unconditional payments to Lila in satisfaction of its claim: the first for $25,000.00, and the second for $75,000.00, that were disbursed to Lila on 16 August 2006, which, according to Lloyd's, constituted the balance of the claim that was due. The $100,000.00 paid by Lloyd's to Lila constituted the undisputed portion of Lila's property damage claim, and the only amount for which Lloyd's acknowledged responsibility; further, Lloyd's contends that the sum represents the amount that Lloyd's was statutorily obligated to pay pursuant to La. R.S.22:658 A(1).[1] In correspondence directed to Lila accompanying the second payment, Lloyd's stated the following:
Attached you will find the MYI draft for the second payment in this matter, $75,000, which constitutes the balance of the currently acknowledged claim, as identified to you previously. Also, attached you will find a copy of the second Proof of Loss, which we need to have executed by the insured before a notary public, and the original returned to our offices.
Please note the insurers are not waiving any policy terms, conditions or provisions with the providing of this payment and the Second Proof of Loss. Please also note that there is a two-year Statute of Limitations on the policy of insurance issued by Lloyd's Underwriters. We note that the first anniversary is quickly approaching on this matter, August 29, 2006.
After disbursement of this second check to Lila, Lloyd's next communication from Lila regarding its hurricane claim was notice of the filing of the instant suit. It is undisputed that the commercial property insurance policy issued by Lloyd's to Lila contained a two-year contractual period[2] for insureds to initiate judicial action.[3]
On 8 October 2007, Lila filed suit against Lloyd's seeking recovery of insurance proceeds, penalties, and attorney's *142 fees under La. R.S. 22:658 and La. R.S. 22:1220. Lloyd's filed an exception of prescription asserting that Lila's claim had prescribed on its face as it was filed more than two years from the date of loss as per the insuring agreement and after both statutory extensions of time to file Hurricane-Katrina claims had expired.[4] In contrast, Lila argued that the unconditional partial payments made by Lloyd's constituted its acknowledgement of Lila's rights under the policy and thereby served to interrupt prescription.
On 15 February 2008, the trial court granted Lloyd's' exception of prescription dismissing Lila's claims, assigning written reasons. This appeal ensued.

DISCUSSION
The sole issue presented for appellate review is whether Lila's suit seeking recovery for property damage sustained during Hurricane Katrina, and for bad faith penalties filed against Lloyd's was timely.[5]
Prescription begins to run from the date of the loss. La. C.C. art. 3454; Gremillion v. Travelers Indemnity Company, 256 La. 974, 984, 240 So.2d 727, 731 (La.1970). It is undisputed that the property damage Lila claims to have sustained as a result of Hurricane Katrina occurred on 29 August 2005. Pursuant to the provisions of Lloyd's' policy, Lila had two years from 29 August 2005, or until 29 August 2007, to judicially assert a claim against Lloyd's. The burden of proof on a prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to plaintiff. Bailey v. Khoury, 04-0620, p. 9 (La. 1/20/05), 891 So.2d 1268, 1275. Lila filed the instant lawsuit on 8 October 2007, more than the one year following its loss,[6] more than the two years provided by the contract, and after 1 September 2007, which is the very last day upon which a claimant could file suit as a result of damages sustained in Hurricane Katrina pursuant to Acts 802 and 739 of the Legislature.[7] The suit was prescribed on its face. The burden thus shifted to Lila to show that the action was not prescribed. See Cichirillo v. Avondale Indus., Inc., 04-2894, 04-2918 (La.11/29/05), 917 So.2d 424.
Prescription may be defeated if it can be shown that the period was interrupted or that the right to plead prescription was renounced. See Lima v. Schmidt, 595 So.2d 624 (La.1992). "Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." See La. C.C. art. 3464. Lila, citing the Supreme Court's decision in Mallett v. McNeal, 05-2289 (La.10/17/06), 939 So.2d 1254, sought to satisfy this burden by arguing that the two unconditional payments for property damage made to it by Lloyd's, the last payment being made on *143 16 August 2006, constituted an acknowledgment of liability sufficient to interrupt prescription, and the two-year contractual period provided for in the Lloyd's policy; they assert the two-year contractual period began to run anew on 16 August 2006, making their 8 October 2007 petition timely.[8] Alternatively, in oral argument, counsel for Lila averred that, according to the Legislature's enactment of Acts 802 and 739, specifically extending prescription on all Hurricane Katrina claims to 30 August 2007 (Act 802) and 1 September 2007 (Act 739), prescription did not run at all from 29 August 2006 through 1 September 2007, and thus, when the period of interruption ended on 1 September 2007, and prescription commenced running again, Lila still had an additional year to file suit in accordance with the two-year provision set forth in the insuring agreement.[9] We reject both propositions.
Pursuant to La. C.C. art. 3467, "[p]rescription runs against all persons unless exception is established by legislation." In response to the wide-spread property damage occasioned to property owners during Hurricanes Katrina and Rita, the Louisiana Legislature established such an exception by enacting Act 802, an uncodified law, which provides, in pertinent part:
Recognizing the magnitude of the unprecedented destruction caused by Hurricanes Katrina and Rita . . . the Louisiana Legislature hereby establishes an additional, limited exception to the running of prescription and, as such, prevents the running of prescription for one year on any claim seeking to recover for loss or damage to property against an insurer on an homeowner's insurance policy . . . personal property insurance policy, commercial property insurance policy, or flood insurance policy . . . caused by flood, wind, or rain . . . when such loss or damage was caused by or as a result of Hurricane Katrina or Hurricane Rita, or both. Accordingly, any such claim for damages caused by Hurricane Katrina shall be instituted on or before August 30, 2007, and suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date. [Emphasis added.]
By the express terms of this legislative exception, prescription on any Hurricane Katrina property damage claim, such as the claim asserted by Lila against Lloyd's, was prevented from running for a period of one year, and any suit asserting such hurricane-related claim had to be filed on or before 30 August 2007, or such an action would be forever barred, unless a contract between the parties provided for a later date.[10] The Legislature could not have been more clear: if a party did not institute judicial proceedings to recover for damages sustained arising out of Hurricane Katrina by 30 August 2007, the party would not be able to sustain an action filed thereafter.
The Legislature also enacted Act 739, which added La. R.S. 22:658.3, and provides, in pertinent part:

*144 a) Notwithstanding any other provision of this title to the contrary, any person or entity having a claim for damages pursuant to a homeowners insurance policy, personal property insurance policy, tenant homeowners insurance policy, condominium owners insurance policy, or commercial property insurance policy, and resulting from Hurricane Katrina shall have through September 1, 2007 within which to file a claim with their insurer for damages unless a greater time period to file such claim otherwise provided by law or contract.
It is clear from reviewing these statutes in conjunction with one another that the Legislature extended the time for instituting a judicial action against an insurer seeking recovery for property damages arising out of Hurricane Katrina to 1 September 2007, at the very latest, or forever be barred from doing so.[11]
The only exception the Legislature provided to the filing deadlines set forth in Acts 802 and 739 was if the contract or the parties (Acts 802) or the law (Act 739) provided for a later date for the filing of an action. It is undisputed that the Lloyd's policy at issue provides for a two-year period within which Lila must assert a claim judicially. The two-year period commenced to run from the date Lila sustained its loss on 29 August 2005. Thus, pursuant to the Lloyd's two-year policy provision, Lila was required to institute legal action by 29 August 2007, which was actually one day shorter than the time period provided for by the Legislature in Act 802. We find that the Lloyd's policy at issue does not provide for a longer period for Lila to file suit.
Additionally, no evidence exists in the record that Lila and Lloyd's ever agreed to an extension of time for Lila to institute legal proceedings against Lloyd's beyond the two-year contractual period. In its 16 August 2006 letter, Lloyd's specifically stated that it was not waiving any of its rights under the policy, and further, reminded Lila of the two-year contractual "statute of limitations" advising that the one-year anniversary was soon approaching.
In its brief on appeal, Lila suggests that the ten-year prescriptive period for actions pertaining to breach of contract should apply to its action against Lloyd's,[12] and that, pursuant to La. C.C. art. 3471, parties cannot shorten statutory prescriptive periods by contract.[13] We disagree that the ten-year prescriptive period applies to Lila's claims against Lloyd's. At the time of Hurricane Katrina, La. R.S. 22:691 F(2) established a one-year minimum period for instituting actions under a statutory policy of insurance. See Gremillion, 256 La. at 987, 240 at 732.[14] Accordingly, *145 but for the two-year contractual provision contained in the Lloyd's policy (and the extensions granted by Acts 802 and 739), under La.R.S. 22:691, we find that Lila would have had only one year from the date of loss to bring the instant suit for property damage and penalties against Lloyd's.
Accordingly, as the parties did not contract or otherwise agree to a longer period of time, and because the statute applicable to Lila's claim against Lloyd's did not provide for a later date to bring the subject action, we find that the trial court was correct in determining that the legislative exceptions to Acts 802 and 793 did not apply to Lila, thereby extending the deadline for filing the instant action against Lloyd's beyond 1 September 2007.[15] As Lila's suit was filed on 8 October 2007, after the deadline established by the Legislature and mandated by the policy, the trial court correctly determined that Lila's suit was untimely filed.
We now turn to Lila's argument that the Supreme Court's decision in Mallett v. McNeal, supra, requires a reversal of the trial court's judgment. Lila contends that prescription in this case was interrupted by the two unconditional payments tendered by Lloyd's pursuant to La.R.S. 22:658 A(1), which statute provides, in pertinent part:
All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due an insured within thirty days after receipt of satisfactory proofs of loss from an insured or any party in interest.
We disagree with Lila and hold that the Supreme Court's decision in Mallett does not require reversal in the case before us. In Mallett, the plaintiff sustained injuries in a rearend collision occurring on 8 January 2004. The defendant driver was insured by USAA. In November 2004, in response to a demand for payment, USAA issued a check to the plaintiff for the property damage sustained to his automobile. Thereafter, the plaintiff submitted a supplemental claim for additional damages to his vehicle and USAA issued a second check for the additional amount. The plaintiff cashed both of the checks. Then, on 17 February 2005, more than one year after the accident, the plaintiff filed suit against USAA for personal injuries and additional damages sustained in the accident. The plaintiff averred in his petition that, although the action was filed more than one year from the date of the accident, the action was not prescribed because USAA's payment of the property damage served as an acknowledgment of liability sufficient to interrupt prescription. USAA filed an exception of prescription. The district court denied the exception, and the appellate court denied writs. The Supreme Court granted certiorari to determine whether a payment of the undisputed amounts by the tortfeasor's insurer (USAA) to a third-party claimant (the plaintiff) for property damage arising out of an automobile accident qualified as an acknowledgment sufficient to interrupt prescription with respect to a personal injury claim arising out of the same accident, or qualified as a "settlement" as that term *146 is used in La.R.S. 22:661.[16]Mallett, 05-2289, p. 1, 939 So.2d at 1256. The Mallett Court held:
[W]e hold that an unconditional payment of a property damage claim constitutes an acknowledgment sufficient to interrupt prescription and that the term "settlement," as used in La.R.S.22:661 is limited to a settlement or compromise as contemplated by La.C.C. art. 3071. Specifically, ... we find that the insurer made an unconditional payment to the third-party claimant, thereby interrupting prescription. [Emphasis supplied.]
Mallett, 05-2289, p. 2, 939 So.2d at 1256.
In the case at bar, Lila would have us broaden the Supreme Court's holding in Mallett to include that an unconditional payment for the undisputed amounts of a first-party property damage claim made by an insurer to its insured pursuant to its statutory obligation under La.R.S. 22:658 A(1) constitutes an insurer's acknowledgment of its liability sufficient to interrupt prescription on the insured's suit seeking additional amounts under the policy. We have found no statutory or jurisprudential authority in support of Lila's position, nor has Lila cited any, and thus, we decline to expand the holding in Mallett based upon the facts before us.
Additionally, we note that even if we were to determine that the holding in Mallett extends to Lila's first-party claim against Lloyd's, which determination we do not reach in this case, and found that Lloyd's two payments of undisputed amounts constituted an acknowledgment sufficient to interrupt prescription, it would only have interrupted the claim for one year, or until 16 August 2007 (one year from the date of the last payment made by Lloyd's). Then, Legislative Acts 802 and 793 would have extended this time to no later than 1 September 2007. As Lila did not file suit against Lloyd's until 8 October 2007, its claim is still prescribed.[17]
Lila erroneously avers that, because the policy contained a two-year contractual *147 limitation for instituting legal action and Acts 802 and 739 interrupted prescription for an entire year, such that the time between 29 August 2006 and 1 September 2007 should not be counted, once the interruption ceased and prescription recommenced running (on 1 September 2007), Lila had one more year within which to file suit. Accordingly, Lila contends that its 8 October 2007 filing was timely. We disagree.
The two-year time limitation contained in the Lloyd's policy is not a prescriptive period subject to interruption or suspension, but rather, is merely a contractual pledge or agreement by the insurance company not to plead prescription if the insured institutes legal action within the two-year time frame.[18] To read the provision as Lila would have this court interpret it would mean that any time an insurance company made a payment to its insured under the policy, the two-year contractual limitation for filing suit would commence running anew. This is illogical and clearly is not what is intended by the two-year limitation set forth in the policy, as specifically noted by Lloyd's in its 16 August 2006 letter accompanying payment to Lila. In the letter, Lloyd's stated that the payment constituted the balance of the currently acknowledged claim [the undisputed amount] and that Lloyd's was not waiving any of its rights under the policy, which would include the two-year time limit for filing suit. The letter also included a reminder to Lila that the one-year anniversary of the loss was quickly approachingthereby putting Lila on notice that it would have one more year from the anniversary date to institute legal action.
Thus, pursuant to the express terms of the insuring agreement, which was the contract existing between the parties, Lila had two years from the date of the loss, or until 29 August 2007, within which to file its action against Lloyd's wherein Lloyd's would be contractually precluded from pleading prescription. Acts 802 and 739 extended this contractual period of prohibition as to Lloyd's for an additional three days, or until 1 September 2007, at the very latest.[19] Thereafter, the insuring agreement, not any law or jurisprudence, obligated Lloyd's to refrain from asserting the plea of prescription. Accordingly, in response to Lila's Petition for Damages filed on 8 October 2007, more than two years from the date of loss and subsequent to the enacted Legislative extensions, Lloyd's properly pleaded the exception of prescription, and the trial court correctly granted it.
We conclude that Lila's suit was not timely filed within the limits of the contractual two-year policy period or within the deadlines established by 2006 Acts No. 802 and 2006 Acts No.' 739, supra. The plea of prescription filed by Lloyd's therefore has merit and must be maintained.

*148 DECREE
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 22:658 A(1) requires that "[a]ll insurers issuing any type of contract [subject to exceptions not applicable here] shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." Failure to tender the amount of the claim due, or the undisputed portion of the acknowledged claim, subjects an insurer to penalties and attorney's fees.
[2] While the policy of Lloyd's at issue is not contained in the record on appeal, counsel for Lila has acknowledged in memoranda and in oral argument before this Court that the applicable policy contains a two-year contractual period for filing suit. Lila contends that "Lloyd's did not supply a copy of the [insurance] contract" to it, but there is no evidence in the record nor any assertion by Lila that it ever actually requested a copy of the policy from Lloyd's.
[3] While the policy contains what is referenced as a "Statute of Limitations" provision, this provision does not actually create a legal prescriptive period for instituting legal action by the insured against the insurer. Instead, this provision is merely an agreement by the insurance company not to plea an exception of prescription to suits filed within the time limitation set forth in the policy.
[4] The enactment of 2006 Acts No. 802 by the Louisiana Legislature extended the time for instituting a claim for damages caused by Hurricane Katrina to 30 August 2007. Additionally, 2006 Acts No. 739 was enacted by the Legislature adding La. R.S. 22:658.3, extending the time to file a claim against an insurer for damages sustained during Hurricane Katrina to 1 September 2007.
[5] On appeal, Lila assigned as error the trial court's finding that the policy provided a one-year contractual limitation for filing suit against Lloyd's. We find that the trial court's reference to the one-year period was a typographical error as the parties have agreed that the Lloyd's policy provides for a two-year period within which an insured must institute legal action against the insurer. Thus, we pretermit any further discussion regarding Lila's first assignment of error.
[6] See La. R.S. 22:691 F(2).
[7] See H.H. White, L.L.C. v. The Hanover Insurance Co., 559 F.Supp.2d 714 (E.D.La.5/29/08).
[8] According to this argument, Lila contends that prescription on its property damage claim would not accrue until 16 August 2008, and thus, the filing of its petition on 8 October 2007, was timely.
[9] By this argument Lila contends it would have had until 1 September 2008 to file its claim, as the entire year of the interruption would not have been counted towards the two-year contractual period provided for in the Lloyd's policy.
[10] We need not reach the issue of whether the term "forever barred" is prescriptive or peremptive.
[11] In H.H. White, L.L.C. v. The Hanover Insurance Co., 559 F.Supp.2d 714 (E.D.La.5/29/08), the United States District Court for the Eastern District of Louisiana analyzed the two statutes (Act 802 dealing with filing suits and being prescriptive in nature, and Act 739 relating to the filing of claims, thereby altering the contractual language of the insuring agreement), and determined that, in order to make sense of the two laws, "the legislature intended for 1 September 2007 to be the deadline for filing lawsuits for damages caused by Hurricane Katrina." We agree with this conclusion.
[12] See La. C.C. art. 3499.
[13] La. C.C. art. 3471 provides:

[A] juridical act purporting to exclude prescription, to specify a longer period that that established by law, or to make the requirements of prescription more onerous, is null.
[14] Based on the information contained in the record and the oral argument of counsel, we assume the commercial property insurance policy issued by Lloyd's to Lila was a statutory policy of insurance subject to the provisions of La. R.S. 22:691 F(2), including the one-year prescriptive period for filing suit.
[15] While the trial court erroneously stated that the claim would have prescribed on 29 August 2006, the result remains the same had the court noted the correct contractual period under the policy, 29 August 2007.
[16] Under La. R.S. 22:661, a settlement of a third-party claim for property damage relating to a motor vehicle policy shall not constitute an admission of liability by the insured, or recognition thereof by the insurer, as to any other claim arising from the same accident or event. Mallett, 05-2289, p. 9, 939 So.2d at 1260.
[17] We further note that the Contract Clause of the United States Constitution provides that "[n]o state shall . . . pass any . . . law impairing the Obligations of Contracts." United States Constitution Article I, Section 10. Similarly, the Contract Clause of the Louisiana Constitution states that "[n]o bill of attainder, ex post facto law or law impairing the obligations of contracts shall be enacted." La. Const. Art. I, Section 23. The Supreme Court has previously described these constitutional provisions as "virtually identical" and "substantially equivalent." Morial v. Smith & Wesson Corp., 00-1132, p. 12 (La.4/3/01), 785 So.2d 1, 13. With regard to the two-year contractual limitation for taking judicial action, because the Lloyd's policy provides Lila with a greater right than is afforded to it by law (i.e., La. R.S. 22:691 F(2)), we see no reason for this court to intercede as there has been absolutely no showing that the "general good of the public" is at stake. See Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 241, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727 (1978), wherein the Supreme Court stated:

It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.
[18] In this regard, we note that La.C.C.P. art. 927 B provides that "[t]he court cannot supply the objections of prescription and res judicata, which must be specifically pleaded." Thus, even though La.R.S. 22:691 F(2) provides a one-year prescriptive period for actions under a commercial property insurance policy, Lloyd's contractually agreed not to plead prescriptionand the court could not raise the exception sua spontefor an additional year.
[19] See State v. All Property and Casualty Insurance Carriers Authorized and Licensed to do Business in the State, 06-2030, pp. 14-15 (La.8/25/06), 937 So.2d 313, 324, wherein the Supreme Court declared that Act 802 and Act 739, which added La. R.S. 22:658.3, were constitutional in extending prescriptive periods for filing property insurance claims arising from Hurricanes Katrina and Rita, even though such an extension impaired the property insurers' contract rights.