# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #009

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Cole, J.:**

2025-C-00443     CYNTHIA BRYAN, AUBRY BRYAN, JR., AUNYA BRYAN, AND GLENDA BRYAN VS. LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION AS THE GUARANTOR OF THE INSOLVENT INSURANCE COMPANY, SOUTHERN FIDELITY INSURANCE COMPANY (Parish of Orleans Civil)

AFFIRMED AND REMANDED. SEE OPINION.

# SUPREME COURT OF LOUISIANA

## No. 2025-C-00443

## CYNTHIA BRYAN, AUBRY BRYAN, JR., AUNYA BRYAN, AND GLENDA BRYAN

## VS.

## LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION AS THE GUARANTOR OF THE INSOLVENT INSURANCE COMPANY, SOUTHERN FIDELITY INSURANCE COMPANY

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of Orleans Civil

**COLE, J.***

This is a first-party[1] property insurance dispute arising from Hurricane Ida that requires this Court to determine the prescriptive period applicable to claims against the Louisiana Insurance Guaranty Association ("LIGA"). The legislature provides LIGA a defense where prescription has run against the underlying carrier, and prescription continues to run in favor of LIGA after the underlying carrier's insolvency. LIGA also benefits from a special statutory deadline within which a claimant must make a claim against it. *See* La. R.S. 22:2058(A)(1)(c)(i). However, an unconditional payment interrupts prescription on a first-party insurance claim. Here, plaintiffs' amended petition was filed within two years of Southern Fidelity Insurance Company's unconditional tender on the claim. Because suit was timely under the provisions of the insurance policy (requiring all claims to be filed within two years of the date of loss) and Louisiana law governing the interruption of

---

* Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed Justice pro tempore, sitting for the vacancy in the First District.

[1] "In the world of insurance, a first-party claim is a claim filed by an insured against his own insurer for damage to property or person; whereas a third-party claim is made by a claimant against the insured for damages allegedly caused by the insured." Gary Langlois, Jr., *Kelly v. State Farm Fire & Casualty Company: Practical Effects Resulting from an Expansion of Insurers' Broad Good–Faith Duty*, 61 Loy. L. Rev. 799, 805 (2015) (internal quotation marks omitted).

prescription, we affirm the court of appeal's denial of LIGA's peremptory exception of prescription, albeit on different grounds.

## FACTS AND PROCEDURAL HISTORY

Hurricane Ida made landfall in Louisiana on August 29, 2021, causing damage to property insured by Capitol Preferred Insurance Company, which had merged with Southern Fidelity Insurance Company ("SFIC"). The named insured under the policy at issue was Emma Bryan. Plaintiffs Cynthia Bryan, Aubry Bryan, Jr., Aunya Bryan, and Glenda Bryan ("plaintiffs") claim entitlement to proceeds under the policy. The policy provides that "[n]o action can be brought against [SFIC] unless . . . the action is started within two years after the date of loss."[2]

On June 15, 2022, a Florida court placed SFIC in receivership, and SFIC became an insolvent insurer under La. R.S. 22:2055(7).[3] Before its insolvency, SFIC made one unconditional tender on the claim: a payment of $23,097.55 on March 1, 2022. The record contains no evidence that LIGA adjusted or otherwise contacted anyone regarding the claim following SFIC's insolvency.

On August 28, 2023, plaintiffs filed a Petition for Damages and Breach of Contract, incorrectly naming Louisiana Citizens Property Insurance Corporation ("LCPIC") as defendant. On October 24, 2023, plaintiffs filed an amended petition substituting LIGA for LCPIC. LIGA responded by filing a peremptory exception of prescription, arguing that (i) prescription commenced to run against LIGA on the date of loss (August 29, 2021), (ii) the policy's two-year deadline applied to LIGA, and (iii) because there was no relationship between LCPIC and LIGA, plaintiffs'

---

[2] Capitol Preferred Insurance Company, Inc., Policy No. CLH 9747379 05 17, HOMEOWNERS 2 – BROAD FORM, Section I Conditions, Section G. Civil District Court Record P. 71.

[3] Under La. R.S. 22:2055(7), "'Insolvent insurer' means an insurer who . . . (a) Is licensed and authorized to transact insurance in this state, either at the time the policy was issued or when the insured event occurred[, and] (b) Against whom an order of liquidation with a finding of insolvency has been entered by a final judgment of a court of competent jurisdiction in the insurer's state of domicile or of this state, and which order of liquidation has not been stayed or been the subject of a perfected suspensive appeal or other comparable order."

October 24, 2023 amended petition, filed more than two years after the date of loss, did not "relate back" to the original filing, making plaintiffs' claim prescribed.[4]

The trial court denied LIGA's exception, and LIGA sought a supervisory writ with the Fourth Circuit. In a 4-to-1 decision, a five-judge panel granted LIGA's writ application but denied relief, holding that the two-year deadline for suit against LIGA commenced on the date of SFIC's insolvency—June 15, 2022—rather than on the date of loss. *Bryan v. Louisiana Citizens Property Ins. Corp.*, 24-0694 (La. App. 4 Cir. 3/11/25), 414 So.3d 768. The majority found that a claim against LIGA does not "vest" until the insurer is declared insolvent, and prescription could not commence to run until the date of insolvency. *Id.* One judge dissented and would find that prescription should run from the date of loss irrespective of insolvency. We granted certiorari to resolve these important issues. *Bryan v. Louisiana Citizens Prop. Ins. Corp.*, 25-0443 (La. 6/25/25), 412 So.3d 215.

## ANALYSIS

LIGA plays a vital role in Louisiana's insurance system, serving as a safety net for policyholders when insurers become insolvent.[5] The financial stability of LIGA is essential to maintaining public confidence in Louisiana's insurance market and ensuring that policyholders are protected even in the face of insurer insolvency. Understanding the importance of LIGA's mission and the challenges it faces in managing claims from insolvent insurers, we turn to the question presented here, *i.e.*,

---

[4] As LIGA concedes, if the proper plaintiffs had timely sued the insolvent carrier, LIGA could be subsequently added, and the amendment would relate back and interrupt prescription against LIGA as of the date of its original filing.

[5] *See generally* Stephanie B. Laborde et al., *The DEF's of LIGA: An Update to the ABC's of LIGA*, 77 La. L. Rev. 997, 998 (2017). Ms. Laborde served as General Counsel for LIGA for more than 20 years.

the timeliness of plaintiffs' petition and what prescriptive period applies, a legal question we review *de novo* in this case.[6]

All personal actions, including an action on a contract, are subject to a liberative prescription of ten years, unless otherwise provided by law. La. C.C. art. 3499. Notwithstanding the general rule, La. R.S. 22:868(B) permits parties to an insurance policy to contractually limit a policyholder's right of action to **no less than two years** from the date of loss. In *Taranto v. Louisiana Citizens Property Ins. Corp.*, 10-0105, p. 15-16 (La. 3/15/11), 62 So.3d 721, 732, this Court found this limitation to be prescriptive in nature and therefore subject to rules of prescription, specifically to suspension and interruption. In his concurrence, now Chief Justice Weimer explained that even where an insurer avails itself of a statute permitting time limitations in an insurance contract, the matter is not one of pure contractual freedom, because the statute still governs the range within which the parties are authorized to agree. *Id.*, 10-0105, 62 So.3d at 746 (Weimer, J., concurring). Because this is a species of prescription, he explained that the general codal and statutory rules of prescription apply. *Id.*

The LIGA Law (La. R.S. 22:2051 *et seq.*) itself does not contain its own prescriptive period. Instead, it contains a claims bar deadline, which provides that a claim must be filed **with LIGA** by "the earlier of five years after the date of the order of liquidation of the insolvent insurer or the final date set by the domiciliary court for the filing of claims against the liquidator or receiver of an insolvent insurer." La. R.S. 22:2058(A)(1)(c)(i).[7] The LIGA Law contains no special prescriptive period,

---

[6] Since there is no dispute regarding material facts, and the issue is purely legal, we apply a *de novo* standard of review. *See Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-0061, p. 4-5 (La. 10/10/21), 333 So.3d 368, 373.

[7] While this statute only requires notice to LIGA **of the claim**, any interruption of prescription via suit also serves to satisfy the claims bar deadline. We also note that any application of the claims bar deadline requires actual notice be transmitted to the insured of the deadline set by the insolvency court. La. R.S. 22:2058(A)(5). For LIGA to apply this claims bar deadline prior to the otherwise applicable prescriptive deadline, we find that notice to the insured must inform the insured that the claims bar deadline is also the deadline to file a claim with LIGA.

4

therefore the general rule of ten years from the date of loss applies. La. C.C. art. 3499.[8] Here, neither of those periods would prohibit these plaintiffs' claims. The insolvency court did not set a final deadline to file claims against SFIC in liquidation,[9] and plaintiffs' suit against LIGA was filed well within ten years of the date of loss.

Nevertheless, and as explained above, the underlying SFIC policy contains a two-year limitation on actions consistent with La. R.S. 22:868(B). The policy provides that "[n] o action can be brought against [SFIC] unless . . . the action is started within two years after the date of loss." *See* footnote 3. The LIGA Law expressly grants LIGA the benefits of the underlying policy provisions. Under La. R.S. 22:2055(6)(a), "'[c]overed claim' means . . . an unpaid claim . . . that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy[.]" And, notably, La. R.S. 22:2058(A)(2) provides that "[t]o the extent of its obligations on the covered claims, [LIGA shall] have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent[.]" One such "right" is the benefit of the SFIC policy's two-year limitation period. Therefore, without any suspension or interruption of prescription, a suit against LIGA in this case would have had to be filed within two years of Hurricane Ida's landfall, and this suit would be deemed untimely.

However, because the foregoing time periods are a species of prescription, as now Chief Justice Weimer observed in *Taranto*, *supra*, in order to determine the timeliness of plaintiffs' petition, we must also examine whether the period was interrupted or suspended. "Prescription is interrupted when one acknowledges the

---

[8] *Accord* Stephanie B. Laborde et al., *The DEF's of LIGA: An Update to the ABC's of LIGA*, 77 La. L. Rev. 997, 1014 (2017) ("The same laws of prescription apply to LIGA as apply to any other party in Louisiana.").

[9] The Florida court's priority payment deadline does not operate as a claims filing deadline because it does not prohibit filing subsequent claims with the receiver.

5

right of the person against whom he had commenced to prescribe." La. C.C. art. 3464. "If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption." La. C.C. art. 3466. An unconditional payment on an obligation, as opposed to a settlement payment, has long been recognized as an acknowledgment.

This Court has held that in the context of a third-party property damage claimant, "an unconditional payment of a property damage claim constitutes an acknowledgment sufficient to interrupt prescription." *Mallett v. McNeal*, 05-2289, p. 1-2 (La. 10/17/06), 939 So.2d 1254, 1256. This holding was extended to claims made pursuant to uninsured/underinsured motorist insurance policies. *Demma v. Auto. Club Inter-Ins. Exchange*, 08-2810, p. 15 (La. 6/26/09), 15 So.3d 95, 105. Many federal courts have already extended these holdings to also find an unconditional payment interrupts prescription in a first-party insurance claim.[10]

We agree that an unconditional payment on a first-party insurance claim constitutes an acknowledgment under La. C.C. art. 3464 sufficient to interrupt prescription.[11] Here, SFIC made an unconditional payment on March 1, 2022, in the amount of $23,097.55, thereby interrupting the two-year period set forth in the policy. Therefore, plaintiffs' amended petition, filed on October 24, 2023, is timely.[12]

---

[10] *See, e.g.*, *Bateman v. Safeco Ins. Co. of Am.*, CV 24-00866-BAJ-EWD, 2025 WL 2723544 (M.D. La. Sept. 24, 2025); *Willis v. State Farm Ins. Co.*, No. 2:22-CV-05556, 2025 WL 2463770, at *2 (W.D. La. Aug. 25, 2025); *Gray v. State Farm Fire & Cas. Co.*, No. CV 23-1053, 2025 WL 1213860, at *3 (W.D. La. Apr. 25, 2025).

[11] We recognize the policy arguments favoring greater incentivization of unconditional payments, but those concerns are properly addressed to the legislature. This Court has consistently held the prescriptive period in insurance contracts is treated in the same manner as other prescriptive periods under our law, and there is no textual basis for us to reject applying these principles in this context. We also acknowledge that *Taranto* contains *dicta* referencing *Lila, Inc. v. Underwriters at Lloyd's, London*, 08-0681 (La. App. 4 Cir. 9/10/08), 994 So.2d 139, which reached a contrary result. For the reasons explained above, we decline to adopt that approach.

[12] Interruption or suspension occurs with respect to LIGA if it would occur with respect to the insolvent insurer. *Accord*, Laborde, 77 La. L. Rev. at 1014. Therefore, we agree with LIGA's position in this case and expressly reject any contrary position it previously took in arguing that an insured's timely filed suit against an insolvent insurer does not interrupt prescription as to

Our holding is limited to unconditional payments—specifically, payments made without qualification, condition, or reservation of rights. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 00–3010, p. 18 (La. 5/15/01), 785 So.2d 779, 791. Not all payments constitute acknowledgment sufficient to interrupt prescription. For example, a payment made in settlement of a claim (La. C.C. art. 3071) would not interrupt prescription, nor would a partial payment under protest (La. C.C. art. 1861). Additionally, interruption of prescription is personal in nature, extending only to those who have a right of action under the policy. The record, here, contains no indication that the March 1, 2022 payment was conditioned in any way.

Finally, LIGA raised the ancillary issue of whether plaintiffs, as children of the named insured, have a right of action against LIGA under the SFIC policy. That issue was raised for the first time by LIGA before this Court, and there is no evidentiary record concerning whether these plaintiffs were the legal successors of the named insured, whether a succession was opened, or any other myriad variables. There may also be questions concerning applicable insurance policy defenses from which LIGA may benefit. Those questions are best addressed in the first instance by the trial court with the benefit of fully developed briefing and evidence, and LIGA is free to raise them below.

## CONCLUSION

For the foregoing reasons, we affirm the court of appeal's denial of LIGA's exception of prescription. We remand this matter to the trial court for further proceedings consistent with this opinion.

**AFFIRMED AND REMANDED.**

---

LIGA. *See, e.g.*, *Green v. Maison Insurance Company*, 24-0297 (La. App. 5 Cir. 9/4/24), 398 So.3d 231.